1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10  KEVIN LAQUAN TRICE,               ) 1:08-cv-01891-AWI-SMS
                                     )
11          Plaintiff,               ) ORDER DISMISSING PLAINTIFF'S
        v.                           ) COMPLAINT WITH LEAVE TO FILE AN
12                                   ) AMENDED COMPLAINT NO LATER THAN
    MODESTO CITY POLICE              ) THIRTY DAYS AFTER THE DATE OF
13  DEPARTMENT, et al.,              ) SERVICE OF THIS ORDER (DOC. 1)
                                     )
14          Defendants.             ) ORDER DIRECTING THE CLERK TO SEND
                                     ) TO PLAINTIFF A CIVIL RIGHTS
15  _____    ) COMPLAINT FORM FOR A PERSON IN
                                       CUSTODY
16
17
18

19      Plaintiff is proceeding pro se with an action for damages

20  and other relief concerning alleged civil rights violations. The

21  matter has been referred to the Magistrate Judge pursuant to 28

22  U.S.C. § 636(b) and Local Rules 72-302 and 72-304. Pending before

23  the Court is Plaintiff's application to proceed in forma pauperis

24  and his complaint, both filed on December 9, 2008.

25      I. Application to Proceed in Forma Pauperis

26      Plaintiff has made the showing required by 28 U.S.C.

27  § 1915(a). Accordingly, the request to proceed in forma pauperis

28  will be granted.

Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. § 1915(b)(1). Plaintiff is obligated to make monthly payments in the amount of twenty percent of the preceding month's income credited to Plaintiff's trust account.

II. <u>Directions to the Department of Corrections</u>

The California Department of Corrections is required to send to the Clerk of the Court payments from Plaintiff's account each time the amount in the account exceeds $10.00, until the statutory filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

III. <u>Screening the Complaint</u>

A. <u>Legal Standards</u>

The Court must screen complaints brought by prisoners seeking relief against a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the Court determines that an allegation of poverty is untrue or that the action is 1) frivolous or malicious, 2) fails to state a claim upon which relief may be granted, or 3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. However, "the liberal pleading standard... applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490 U.S. 319, 330 n.9 (1989).

Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff does not meet his or her obligation to provide the grounds of entitlement to relief by supplying only conclusions, labels, or a formulaic recitation of the elements of a claim. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). Factual allegations must be sufficient, when viewed in light of common experience, to raise a right to relief above the speculative level and to provide plausible grounds to suggest and infer the element, or to raise a reasonable expectation that discovery will reveal evidence of the required element. <u>Bell</u>, 127 S.Ct. at 1965.

In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, <u>Hospital Bldg. Co. v. Trustees of Rex Hospital</u>, 425 U.S. 738, 740 (1976), construe the pro se pleadings liberally in the light most favorable to the Plaintiff, <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint, and it may not be dismissed based on a court's assessment that the plaintiff will fail to find evidence to support the allegations or prove the claim to the satisfaction of the finder of fact. <u>Bell</u>, 127 S.Ct. at 1969.

If the Court determines that the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies of the complaint can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the Plaintiff cannot prevail on the facts that he has alleged and that an opportunity to amend would be futile. Lopez v. Smith, 203 F.3d at 1128.

A claim is frivolous if it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319, 324 (1989). A frivolous claim is based on an inarguable legal conclusion or a fanciful factual allegation. Id. A federal court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or if the factual contentions are clearly baseless. Id.

The test for malice is a subjective one that requires the Court to determine whether the applicant is proceeding in good faith. Kinney v. Plymouth Rock Squab. Co., 236 U.S. 43, 46 (1915); see Wright v. Newsome, 795 F.2d 964, 968 n. 1 (11th Cir. 1986). A lack of good faith is most commonly found in repetitive suits filed by plaintiffs who have used the advantage of cost-free filing to file a multiplicity of suits. A complaint may be inferred to be malicious if it suggests an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases, Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C.Cir. 1981); if it threatens violence or contains disrespectful references to the Court, id.; or if it contains untrue material allegations of fact or false statements made with

4

knowledge and an intent to deceive the Court, <u>Horsey v. Asher</u>, 741 F.2d 209, 212 (8th Cir. 1984).

### B. <u>Plaintiff's Complaint</u>

Plaintiff is serving a sentence of imprisonment for life without the possibility of parole for the murder of Jose Ruiz, committed in the course of a robbery of the victim's home in Modesto early March 2002. (Cmplt. pp. 21, Doc. 1-2 p. 55.) In a twenty-seven page complaint followed by approximately 175 additional pages of exhibits, Plaintiff sues the Modesto Police Department as well as the Chief of Police and individual officers thereof, and the Stanislaus County District Attorney's Office and two deputy district attorneys, seeking damages and declaratory relief (impeachment and/or fining of officers) with respect to alleged civil rights violations occurring in the course of the investigation of the murder and Plaintiff's arrest and detention as well as alleged errors in the trial proceedings that resulted in his conviction. Plaintiff's allegations are generally that the police officers and prosecutors acted in concert to arrest and interrogate Plaintiff and charge and convict him of the crime unlawfully based on false or fraudulent evidence.

### C. <u>Civil Rights Violations</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a

5

plaintiff must plead that defendants acted under color of state law at the time the act complained of was committed and that the defendants deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986).

Further, the statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.  Department of Social Services, 436 U.S. 658, (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

D. Heck v. Humphrey

Although Plaintiff alleges that he was convicted, he does not allege that his conviction has been reversed or otherwise invalidated.

The allegations of the complaint are disorganized, conclusional, and uncertain in some respects, but Plaintiff alleges that he was arrested and subjected to a search without probable cause at a time when Plaintiff had suffered gunshot wounds to the chest and stomach and was being transported to and treated in a hospital for the wound; Defendant police officers thereby violated his rights under the Fourth Amendment protecting

against unreasonable searches and seizures. (Cmplt. pp. 4.)
Plaintiff alleges in a conclusional fashion that the Defendants
engaged in a conspiracy based on their employment. (Cmplt. pp.
11-13.) It appears that the gist of Plaintiff's complaint is that
the evidence upon which the police relied, which was apparently
later introduced at trial and was the basis of the conviction,
was fraudulent or fabricated. (Id. at 13-14.)

When a prisoner challenges the legality or duration of his
custody, or raises a constitutional challenge which could entitle
him to an earlier release, his sole federal remedy is a writ of
habeas corpus. Preiser v. Rodriquez, 411 U.S. 475 (1973); Young
v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct.
1090 (1991). Moreover, when seeking damages for an allegedly
unconstitutional conviction or imprisonment, "a § 1983 plaintiff
must prove that the conviction or sentence has been reversed on
direct appeal, expunged by executive order, declared invalid by a
state tribunal authorized to make such determination, or called
into question by a federal court's issuance of a writ of habeas
corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88
(1994). "A claim for damages bearing that relationship to a
conviction or sentence that has not been so invalidated is not
cognizable under § 1983." Id. at 488. Under Heck v. Humphrey, 512
U.S. 477 (1994), a § 1983 action that would call into question
the lawfulness of a plaintiff's conviction or confinement is not
cognizable unless the plaintiff can prove that his conviction or
sentence has been reversed on direct appeal. The Heck principle
applies to claims that would necessarily imply the invalidity of
any conviction that might have resulted from the prosecution of

7

the dismissed charge, including pending charges in addition to actual convictions. <u>Harvey v. Waldron</u>, 210 F.3d 1008, 1013-14 (9th Cir. 2000) (overruled on a related point concerning the accrual of claims in <u>Wallace v. Kato</u>, 549 U.S. 384 (2007)).

The bar of <u>Heck</u> applies generally to claims of unlawful or false arrest that are in turn based on challenges to the validity or sufficiency of evidence relied upon to detain, arrest, and convict an individual. <u>Cabrera v. City of Huntington Park</u>, 159 F.3d 374, 380 (9th Cir. 1998); <u>Harvey v. Waldron</u>, 210 F.3d at 1014-16. The bar of <u>Heck</u> also applies to Plaintiff's claim that he was maliciously and unlawfully interrogated and prosecuted. <u>Guerrero v. Gates</u>, 442 F.3d 697, 703-04 (9th Cir. 2006).

Plaintiff raises many claims relating to the course of the trial proceedings, such as prosecutorial misconduct, instructional error, and violations of Plaintiff's rights to notice of his rights and the accusations against him, to counsel, to due process with respect to evidentiary rulings and discovery, to a speedy trial, and protection against double jeopardy. (Cmplt. pp. 13-14, 17, 21-24.) Such claims, if made out, would necessarily bear upon the invalidity of his conviction and thus are barred by <u>Heck</u>.

Because all of these claims are barred by <u>Heck</u>, they must be dismissed.

However, although Plaintiff has not alleged that his conviction has been invalidated, it is possible that Plaintiff could allege such a fact or other facts stating a claim upon which relief could be granted. Accordingly, Plaintiff will be given leave to file an amended complaint with respect to such

1  claims.

2        E. Unlawful Search and Seizure

3        As to Plaintiff's allegation that he was searched and his

4  cash was seized by unspecified defendants (Cmplt. at pp. 7, 16-

5  18), the Court interprets Plaintiff's allegations as an assertion

6  that the intrusions were accomplished without probable cause.

7        To prevail on a § 1983 claim for false arrest and

8  imprisonment, a plaintiff has to demonstrate that there is no

9  probable cause to arrest him or other justification. Cabrera v.

10  City of Huntington Park, 159 F.3d 374, 380 (9ᵗʰ Cir. 1998);

11  Dubner v. City and County of San Francisco, 266 F.3d 959, 964-65

12  (9ᵗʰ Cir. 2001). An officer may arrest a person without a warrant

13  if there is probable cause to believe that the person has

14  committed or is committing an offense. Michigan v. DeFillippo,

15  443 U.S. 31, 36 (1979). "Probable cause" to justify an arrest

16  means facts and circumstances within the officer's knowledge that

17  are sufficient to warrant a prudent person in believing, in the

18  circumstances shown, that the person has committed, is

19  committing, or is about to commit an offense. Id. at 37.

20        Probable cause to search is present where the facts and

21  circumstances known to the officer conducting the search are

22  sufficient to warrant persons of reasonable prudence in the

23  belief that contraband or evidence of a crime will be present.

24  Brinegar v. United States, 338 U.S. 160, 175-76 (1949). Each case

25  is determined on its own specific facts and circumstances.

26  Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is the

27  concrete factual circumstances of a case that will determine the

28  scope of the Fourth Amendment's reach. Terry v. Ohio, 392 U.S. 1,

9

29 (1968). Thus, the events leading up to the detention or search, when viewed from the standpoint of an objectively reasonable police officer, are the ingredients to the probable cause determination. Ornelas v. United States, 517 U.S. 690, 696-97 (1996). It is not sufficient to state that probable cause is lacking; rather, the pertinent circumstances of the search, including but not limited to the facts known at the time, the persons conducting the search, the time and place of the search, what and/or who was searched, the manner of the search, and so forth, must be set forth.

Here, Plaintiff states only that unspecified defendants's detaining and searching Plaintiff was done without probable cause. (Cmplt. pp. 4, 13.) Plaintiff states only legal conclusions. The precise nature and extent of his claim are not clear.

Further, it is not clear whether or not the alleged conduct resulted in the acquisition of evidence that was used as a basis for his conviction. Thus, it cannot be determined whether or not this claim would call into question the lawfulness of a plaintiff's conviction or confinement.

However, although Plaintiff has not alleged that his conviction has been invalidated, it is possible that Plaintiff could allege such a fact or other facts stating a claim regarding violations of the Fourth Amendment concerning search and/or seizure upon which relief could be granted. Accordingly, Plaintiff will be given leave to file an amended complaint with respect to such claims.

/////

1          F. <u>Photograph of Plaintiff's Injuries</u>

2      Plaintiff alleges that the officers photographed him after

3  his surgery, while he was in severe pain, without his consent and

4  while he was medicated, and in the absence of probable cause or

5  reasonable suspicion. (Cmplt. p. 7.)

6      It is not clear whether or not Plaintiff intended this to be

7  part and parcel of a Fourth Amendment claim or whether or not any

8  use of the photograph was made in the criminal proceedings which

9  resulted in Plaintiff's conviction. To the extent that Plaintiff

10 intended a Fourth Amendment claim, the Court reiterates its

11 previous discussion regarding the need for Plaintiff to set forth

12 all the facts and circumstances of any search or seizure claim.

13     With respect to a right of privacy, it is established that

14 there is a constitutionally protected interest in avoiding

15 disclosure of personal matters, including medical information.

16 <u>Nelson v. National Aeronautics and Space Administration</u>, 512 F.3d

17 1134, 1144 (9th Cir. 2008) (quoting <u>Norman-Bloodsaw v. Lawrence</u>

18 <u>Berkeley Laboratory</u>, 135 F.3d 1260, 1269 (9th Cir. 1998)). In <u>Yin</u>

19 <u>v. State of California</u>,95 F.3d 864, 871 n. 12 (9th Cir. 1996),

20 the court recognized a privacy interest in medical information,

21 including diagnosis and medical records, that was protected under

22 the Fourth Amendment and the Due Process Clause of the Fifth or

23 Fourteenth Amendments. The right to informational privacy is not

24 absolute, but is conditional and may be infringed upon a showing

25 of a proper governmental interest. <u>In re Crawford</u>, 194 F.3d 954,

26 959 (9th Cir. 1999). Relevant factors to be considered are case-

27 specific, but generally include the type of record requested, the

28 information contained therein, the potential for harm in any

11

subsequent nonconsensual disclosure, the injury from disclosure
to the relationship in which the record was generated, the
adequacy of safeguards to prevent unauthorized disclosure, the
degree of need for access, and whether there is an express
statutory mandate, articulated public policy, or other
recognizable public interest militating toward access. Id. In
each case in which governmental action compels disclosure of
private information, the government has the burden of showing
that is use of the information would advance a legitimate state
interest and that its actions are narrowly tailored to meet the
legitimate interest. Id.

It has been held that the distribution to other officers of
nude photographs of an assault victim in obscene positions, taken
without her consent by officers during her visit to a police
station to report the assault, was a violation of the right of
privacy protected by the Fourteenth Amendment. York v. Story, 324
F.2d 450, 454-56 (9th Cir. 1963), cert. denied, Story v. York,
376 U.S. 939 (1964). The court in York noted that the security of
one's privacy against arbitrary intrusion by the police is basic
to a free society and is implicit in the concept of ordered
liberty embraced with the Fourteenth Amendment's due process
clause; further, the naked body is a basic subject of privacy
that is imbued with considerations of elementary self-respect and
personal dignity. 324 F.2d at 455. However, the presence of a
sufficiently weighty governmental interest can constitute a
circumstance sufficient to counterbalance the intrusion involved
in taking and distributing photographs. It has been held that
generalized observation from a distance of nude male prisoners

and routine pat-down searches over clothing by female guards of

male prisoners in the course of maintaining prison security does

not constitute an actionable invasion of privacy. Grummett v.

Rushen, 779 F.2d 491, 494-95 (9th Cir. 1985). Further, it has

been held that no violation of privacy is present where officers

investigate a shooting incident in which the plaintiff was shot

by a police officer while trying to leave the scene of a routine

traffic stop and, in the course of the investigation of the case,

obtain from a financial lending agency a medical report

concerning Plaintiff's physical condition. Hopper v. Hayes, 573

F.Supp. 1368, 1373 (D.C. Idaho 1983). In Hopper, the court

reasoned that there was no issue of fact as to a violation of

privacy in view of the absence of a showing of deprivation of

elementary self-respect, and further considering the presence of

an additional policy consideration, namely, the policy in favor

of enabling the police to conduct bona fide investigations

wherein they question and request information from third parties.

Id. at p. 1373.

     Here, the only facts alleged are that the police

photographed Plaintiff after surgery. The circumstances, such as

the facts prompting the photograph, the identity of the person

taking the picture, the nature and circumstances of the taking of

the photograph, and the use of the photograph, are not set forth.

It appears that at the time Plaintiff was in the hospital, the

law enforcement officers were investigating a homicide. Without

further circumstances set forth, there does not appear to have

been any deprivation of elementary self-respect, and the

government appears to have been proceeding pursuant to a

13

legitimate and, depending upon the circumstances, potentially compelling interest. Accordingly, it does not appear that Plaintiff has alleged an actionable claim of violation of privacy as guaranteed by the Fourteenth Amendment.

However, because it is possible that Plaintiff may allege further facts that might state a claim, Plaintiff will be granted leave to file an amended complaint.

### G. Claim relating to Medical Care

Plaintiff alleges that before and after his arrest in March 2002, he was hospitalized. He allegedly suffered an initial delay in hospitalization due to his being airlifted to a hospital in Merced instead of being treated in Atwater. He underwent multiple surgeries for his gunshot wound and was released to the Stanislaus County Jail. (Cmplt. at 20.) He alleges in a conclusional fashion that while at the jail he was deprived of adequate, meaningful, and effective medical care, including deprivation of dressing changes and pain medications prescribed by the doctors in the intensive care unit at the hospital in Modesto; he suffered gross medical negligence that caused internal infections for two years. (Cmplt. pp 20-21.)

A pretrial detainee's right to medical care is governed by the substantive due process clause of the Fourteenth Amendment, and a detainee's right is at least as great as that of a convicted prisoner. City of Revere v. Masachusetts General Hospital, 463 U.S. 239, 244-5 (1983); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003). Even though the claim proceeds on Fourteenth Amendment grounds, traditional Eighth Amendment standards govern the claim. Lolli, 351 F.3d at 418-19.

14

1  A plaintiff must show that 1) he was confined under conditions

2  posing a risk of objectively, sufficiently serious harm, and 2)

3  the officials in question had a sufficiently culpable state of

4  mind in denying the proper medical care. Id. at 419.

5      Under the Eighth Amendment and under a substantive due

6  process analysis, a prisoner's claim of inadequate medical care

7  does not constitute cruel and unusual punishment unless the

8  mistreatment rises to the level of "deliberate indifference to

9  serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106

10 (1976); Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir.

11 2002.) The "deliberate indifference" standard involves an

12 objective and a subjective prong. First, the alleged deprivation

13 must be, in objective terms, "sufficiently serious." Farmer v.

14 Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501

15 U.S. 294, 298 (1991)). Second, the prison official must act with

16 a "sufficiently culpable state of mind," which entails more than

17 mere negligence, but less than conduct undertaken for the very

18 purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A

19 prison official does not act in a deliberately indifferent manner

20 unless the official "knows of and disregards an excessive risk to

21 inmate health or safety." Id.

22     In applying this standard, the Ninth Circuit has held that

23 before it can be said that a prisoner's civil rights have been

24 abridged, "the indifference to his medical needs must be

25 substantial. Mere 'indifference,' 'negligence,' or 'medical

26 malpractice' will not support this cause of action." Broughton v.

27 Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

28 Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Here, Plaintiff has referred to gross negligence; he has alleged only that he no longer received the same care with respect to dressings and pain medication that he was receiving in the hospital, and that infections resulted for a substantial period of time. Plaintiff's factual allegations are not sufficient, when viewed in light of common experience, to raise a right to relief above the speculative level and to provide plausible grounds to suggest and infer the element of deliberate indifference, or to raise a reasonable expectation that discovery will reveal evidence of the required element. Plaintiff will be given an opportunity to state additional facts in an amended complaint.

H. Racial Profiling

Plaintiff purports to state a claim for racial profiling of

African-American citizens in stops, arrests, detentions, and "bogus" convictions. Plaintiff refers to racial profiling and claims that unspecified defendants had failed to train, supervise, and discipline all defendants or a group of persons referred to as unspecified police officers, detectives, and county and government officials and employees with respect to "race profiling African American Citizens." (Complt. p. 5.)

A claim for racial profiling would not appear to be based on the Fourth Amendment because it is established that outside limited contexts, such as inventory and administrative inspection searches, an officer's motive does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment; rather, the correct basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause. See, Whren v. United States, 517 U.S. 806, 812-13 (1996).

To state a § 1983 claim for violation of the Equal Protection clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005).

Plaintiff has stated no facts in support of his claim of racial profiling except to allege that he was the victim of it with respect to the Defendants' actions in investigating the murder, arresting him, and prosecuting him. He has not alleged facts showing intentional discrimination, or differential

17

treatment of others similarly situated. However, because it is possible that Plaintiff could allege facts stating such a claim, Plaintiff will be given leave to file an amended complaint.

### I. Linkage

The civil rights statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff sometimes refers to Defendants as a group and does not specify which individual or specific entity has been involved in a particular violation. On other occasions, Plaintiff describes actions without identifying the person or entity responsible for the action. Plaintiff is informed that if he files an amended complaint, he must provide facts identifying the particular defendant or defendants involved in any particular action alleged to have been a violation of his rights.

### J. Supervisory Liability

Plaintiff alleges that a the Chief of the Modesto Police

18

Department, named as a "Doe" defendant, was responsible for the training and conduct of the police officers who are named in the complaint. (Cmplt. pp. 10-11.)

In order for a person acting under color of state law to be liable under § 1983, the person must be shown to have personally participated in the alleged deprivation of rights; there is no respondeat superior liability. <u>Bell v. Clackamas County</u>, 341 F.3d 858, 867 (9th Cir. 2003). However, a supervisor may be held liable for the constitutional violations of subordinates if the supervisor participated in, or directed, the violations, or knew of the violations and failed to act to prevent them. <u>Hydrick v. Hunter</u>, 500 F.3d 978, 988 (9th Cir. 2007).

Here, Plaintiff has failed to allege a basis for individual liability of the supervisor of the defendant officers. However, because it is possible that Plaintiff could allege such facts, Plaintiff will be given an opportunity to amend the complaint in this regard.

K. <u>Capacity of the Parties</u>

Plaintiff alleges that the individual defendants are sued in their individual and official capacities.

A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself. <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527 (9th Cir. 1996). When officers in their official capacity and the local government entity for whom they work are both named in a lawsuit, the officers in their official capacity are redundant defendants and may be dismissed in that capacity. <u>Wisler v. City of Fresno</u>, 2007 U.S.Dist. LEXIS 18666, *19 (E.D.Cal. 2007); <u>Luke v. Abbott</u>, 954

1  F.Supp. 202, 203-04 (C.D.Cal. 1997).

2      Plaintiff states that he sues the Defendants in their

3  official and individual capacities. (Cmplt. pp. 10-11.) The

4  police department and the district attorney's office are already

5  parties. To the extent that Plaintiff sues individual officers

6  and employees of local governmental entities in their official

7  capacities, Plaintiff's claims should be dismissed because they

8  are redundant.

9          L. Prosecutorial Immunity

10     Plaintiff sues Assistant District Attorney Douglas Maner and

11 Deputy District Attorney Birgit Fladager for charging Plaintiff

12 and engaging in an unlawful prosecution that allegedly included

13 subornation of perjury, intentional suppression of evidence, the

14 use of illegally obtained evidence, and other prosecutorial

15 misconduct. (Cmplt. pp. 11-14, 20-26.)

16     State prosecutors are absolutely immune from civil liability

17 for acts taken in their official capacity that are closely

18 associated with the judicial process, such as initiating

19 prosecution and presenting the state's case. Imbler v. Pachtman,

20 424 U.S. 409, 427, 430-431 (1976); Milstein v. Cooley, 257 F.3d

21 1004, 1008 (9th Cir. 2001).

22     Thus, Plaintiff's claims against the prosecutors must be

23 dismissed because of their absolute immunity for such conduct.

24 However, Plaintiff will be given an opportunity to amend the

25 complaint.

26          M. Conspiracy

27     Plaintiff alleges in a conclusional fashion that the

28 Defendants conspired with each other and performed actions

20

"concertedly by affirmative link of employment by" the County of Stanislaus. (Cmplt. pp. 11-12, 13.)

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level...." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ...." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation

that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).

Plaintiff will be given an opportunity to amend his complaint with respect to his allegations of conspiracy.

IV. <u>Disposition</u>

Accordingly, it IS ORDERED that

1) Plaintiff's application to proceed in forma pauperis IS GRANTED; and

2) The Director of the California Department of Corrections or his designee SHALL COLLECT payments from Plaintiff's prison trust account in an amount equal to twenty per cent (20%) of the preceding month's income credited to the prisoner's trust account and SHALL FORWARD those payments to the Clerk of the Court each time the amount in the account exceeds $10.00, in accordance with

28 U.S.C. § 1915(b)(2), until a total of $350.00 has been collected and forwarded to the Clerk of the Court. The payments SHALL BE clearly identified by the name and number assigned to this action; and

4) The Clerk of the Court IS DIRECTED to serve a copy of this order and a copy of Plaintiff's in forma pauperis application on the Director of the California Department of Corrections, via the Court's electronic case filing system (CM/ECF); and

5) The Clerk of the Court IS DIRECTED to serve a copy of this order on the Financial Department, U.S. District Court, Eastern District of California, Fresno Division; and

6) Plaintiff's complaint IS DISMISSED with leave to file a first amended complaint; and

7) Plaintiff IS GRANTED thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the pertinent substantive law, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint"; and Plaintiff IS INFORMED that the failure to file an amended complaint in accordance with this order will be considered to be a failure to comply with an order of the Court pursuant to Local Rule 11-110 and will result in dismissal of this action. Further, failure to file an amended complaint that states a claim upon which relief may be granted will be considered to be grounds for dismissing the complaint pursuant to 28 U.S.C. § 1915A(b) and will result in dismissal of the action; and

1    8) The Clerk IS DIRECTED to send to Plaintiff with this

2  order a blank civil rights complaint form for a person in

3  custody.

4

5  IT IS SO ORDERED.

6  **Dated:    January 13, 2009**                    /s/ **Sandra M. Snyder**
                                                   UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28